**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

City Boxing Club, et al.,

    Plaintiffs

v.

USA Boxing, Inc. dba USA Boxing, et al.,

    Defendants

Case No.: 2:23-cv-00708-JAD-DJA

**Order Denying Plaintiffs' Motion for Summary Judgment, Granting Defendants' Motions for Summary Judgment, and Closing Case**

[ECF Nos. 107, 108, 109, 110, 111, 123]

USA Boxing, Inc., the national governing body for Olympic-style boxing, maintains an insurance policy that covers its member clubs for certain losses. But City Boxing Club, a local boxing gym, didn't pay its annual membership dues. So when a City Boxing patron suffered a traumatic brain injury at the gym three weeks into the new year, USA Boxing's insurer refused to cover the resulting lawsuit.

City Boxing now spars with USA Boxing and its insurer over whether the insurer improperly denied coverage and whether USA Boxing breached any obligations to its member. City Boxing theorizes, among other things, that it was actually still a member of USA Boxing because of a de facto "grace period," the prior policy automatically renewed because the insurer didn't give a statutorily required notice that City Boxing had lost coverage, and a "membership agreement" required USA Boxing to allow City Boxing to renew its membership and reinstate coverage retroactively. But the record shows without genuine dispute that City Boxing was not an "insured" under the policy at the time of the accident, coverage cannot be retroactively applied here, the insurer was not required to give any notice of a coverage lapse, and USA

Boxing didn't breach or misrepresent any purported agreement. Because those conclusions knock out every claim in this case, I grant summary judgment for the defendants and close this case.

## Background

USA Boxing, Inc. is the Colorado-based national governing body of Olympic-style boxing across the United States.[1] USA Boxing is made up of local boxing clubs.[2] To join a local boxing club and USA Boxing, a member may pay annual dues.[3] The bylaws for Nevada's local boxing club provide that USA Boxing membership runs for the calendar year and expires December 31st.[4] Upon registration, member clubs receive a confirmation email stating that "[t]his membership is issued on payment of the yearly club dues and expires on December 31."[5] It's USA Boxing's practice to email its members throughout the months of November and December to remind them that their membership is expiring on December 31st and to renew their membership.[6]

**A.     USA Boxing provides general liability insurance for its members.**

For its members, USA Boxing provides annual general liability insurance underwritten by Scottsdale Insurance Company.[7] The policy covers "named insured[s]," which, relevant here, the policy defines as:

---

[1] ECF No. 103-1 at 9, 25, 64; ECF No. 103-3 at 196; ECF No. 103-7 at 104.

[2] ECF No. 103-1 at 64.

[3] *Id.* at 69; ECF No. 103-3 at 226.

[4] ECF No. 103-3 at 226.

[5] ECF No. 103-1 at 53–57.

[6] *See* ECF No. 103-2 at 240–245, 249.

[7] ECF No. 103-1 at 73.

> USA Boxing Inc. member clubs in which all athletes or participants and coaches are members of USA Boxing, Inc. groups members and member coaches solely as respects to insured activities for which a group member has received approval from USA Boxing, Inc. or its authorized representative.[8]

The coverage summaries in USA Boxing's insurance manual distributed to member clubs described this coverage as applying to "USA Boxing registered Clubs" for "USA Boxing sanctioned competitions and organized practices at which a coach, manager[,] or trainer is physically present."[9] A USA Boxing "Frequently Asked Questions" document states that "[t]his policy provides [member clubs] with general liability coverage to cover [the club] in the event of injuries or damages resulting from a USA Boxing sanctioned activity."[10]

The coverage summaries state that "coverage starts . . . on the day of registration and expires when the policy expires (December 31)."[11] The coverage summaries' "most commonly asked questions" section states that "liability coverage is in place from the day [the owner] register[s] [the] club. Of course, [the owner] must renew [his] club membership annually."[12] Each year, member clubs insured under USA Boxing's policy may request certificates of insurance.[13] The policy and certificate of insurance state that coverage runs from January 1st to December 31st of that year.[14]

---

[8] *Id.* at 75.

[9] *Id.* at 9, 25; ECF No. 103-3 at 196; ECF No. 103-7 at 104.

[10] ECF No. 103-1 at 69.

[11] *Id.* at 9, 25; ECF No. 103-3 at 196; ECF No. 103-7 at 104.

[12] ECF No. 103-1 at 13.

[13] *Id.* at 14.

[14] *Id.* at 73; ECF No. 103-2 at 239.

3

**B.    City Boxing Club was not current on its USA Boxing dues when a boxer got seriously injured at its gym.**

City Boxing Club was a member club of the Nevada local boxing club and paid dues for several years prior to 2021.[15]  City Boxing's owner Armin Van Damme often paid his dues late.[16]  Keeping with that practice, City Boxing did not pay its annual dues by January 1, 2021,[17] leading USA Boxing to email City Boxing a notice on January 7, 2021, that its membership had expired on December 31, 2020.[18]  City Boxing still had not paid its annual dues by January 21, 2021.[19]  On that date, Christopher Metzger sparred with Kevin Johnson, a professional boxer.[20]  Johnson knocked Metzger unconscious.[21]  Metzger suffered a traumatic brain injury and fell into a coma.[22]

**C.    The carrier denied coverage for the claim.**

In the days following that incident, Van Damme contacted USA Boxing to report the incident.[23]  USA Boxing placed an administrative hold on City Boxing's ability to register as a member.[24]  On February 1, 2021, the Metzgers' attorney sent a notice of claim to USA Boxing regarding the incident.[25]  Scottsdale, through its managing general agent and third-party claims

---

[15] *See* ECF No. 103-1 at 53–55.

[16] *See id.*

[17] *See id.* at 56.

[18] ECF No. 103-2 at 253.

[19] *See* ECF No. 103-1 at 56.

[20] ECF No. 103-3 at 151.

[21] *Id.* at 152; ECF No. 103-2 at 259–60.

[22] *Id.*

[23] ECF No. 111-5 at 65:17–24.

[24] ECF No. 107-3 at 28:21–29:8.

[25] ECF No. 103-2 at 278.

4

administrator K & K Insurance Group, Inc., denied the claim later that month.[26] Afterwards, USA Boxing allowed City Boxing to rejoin USA Boxing.[27]

When the Metzgers eventually filed suit the following year,[28] Van Damme demanded that Scottsdale tender a defense.[29] Despite the lapse in his dues at the time of the incident, Van Damme insisted that City Boxing had been a covered member because a "de facto grace period" for payment of dues sustained his membership.[30] Scottsdale and K&K nonetheless denied coverage once again, determining that City Boxing was not a member of USA Boxing at the time of the accident and thus not an insured.[31] It also noted that Metzger and Johnson were not members of USA Boxing, which it maintained the "insured" definition required for coverage.[32]

Van Damme and City Boxing then settled with the Metzgers.[33] As part of that settlement, they assigned the Metzgers two-thirds of any net proceeds that City Boxing recovers from this coverage lawsuit in exchange for a covenant from the Metzger plaintiffs not to execute on any judgment they might obtain against City Boxing and Van Damme.[34] The Metzgers then secured a $75 million default judgment against City Boxing.[35]

---

[26] ECF No. 103-2 at 332. K&K also explains that it is not actually "responsible for making the coverage determination," explaining that "[i]f K&K is handling a claim for Scottsdale and an issue of coverage arises, K&K is required to report the claim to Scottsdale and then Scottsdale makes a final determination as to the existence of coverage." ECF No. 108 at 2, 5.

[27] *See* ECF No. 103-1 at 56.

[28] ECF No. 103-3 at 21–32.

[29] ECF No. 103-3 at 117.

[30] *Id.* at 10.

[31] *Id.* at 15–17, 136–141.

[32] *Id.*

[33] ECF No. 107-1 at 212–218.

[34] *Id.* at 215.

[35] ECF No. 103-3 at 281–86.

**D.      City Boxing and its owner sue for coverage.**

Van Damme and City Boxing now sue USA Boxing, Scottsdale, and K&K.[36]  They allege that the de facto "grace period" saved City Boxing's USA Boxing membership during the accident, and its readmission into USA Boxing made that membership retroactive, leaving no gap in coverage.[37]  City Boxing also alleges that the policy from the prior year was automatically renewed because Nevada Revised Statute (NRS) 687B.340 required Scottsdale to provide a notice that City Boxing was no longer covered, which Scottsdale did not do.[38]  So Van Damme and City Boxing pray for declarations that either the 2020 or 2021 policy covered City Boxing and assert claims that Scottsdale's denial of coverage breached the insurance contract and amounted to a bad-faith denial.[39]

Van Damme and City Boxing also allege that USA Boxing's administrative hold preventing City Boxing from rejoining USA Boxing intentionally interfered with the insurance-coverage contract and breached their "membership agreement" and its implied covenant of good faith and fair dealing.[40]  They further claim that USA Boxing defamed City Boxing by telling the insurer that City Boxing was not a member and that USA Boxing and the insurers negligently

---

[36] *See generally* ECF Nos. 1-1, 48.  In full, the operative complaint alleges claims for declaratory relief stating that either the 2020 or 2021 policy covered the loss.  *See generally* ECF No. 48.  It asserts a breach-of-contract claim against Scottsdale and bad-faith claims (statutory violations of NRS 686A.310 and breach of the implied covenant of good faith and fair dealing) against Scottsdale and K&K.  *Id.*  It asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, defamation, and intentional interference with a contractual relationship against USA Boxing only.  *Id.*  And it asserts equitable estoppel, fraud, and negligent misrepresentation against USA Boxing and Scottsdale.  *Id.*  Defendant USI Insurance Services, LLC was previously joined and dismissed.  ECF Nos. 48, 66.

[37] ECF No. 48 at 35–40.

[38] *Id.* at 32–35.

[39] *Id.* at 32–40.

[40] *Id.* at 40–45.

and fraudulently misrepresented the nature of the insurance coverage that came with a USA Boxing membership.[41]  City Boxing also seeks to equitably estop USA Boxing and the other defendants from denying coverage based on those representations.[42]

**E.  The parties file cross motions for summary judgment.**

All parties now cross move for summary judgment.  City Boxing and Van Damme contend that they're entitled to summary judgment on their coverage and breach-of-contract claims under the theories they allege.[43]  USA Boxing and its insurers argue that those coverage-related arguments fail because, among other things, City Boxing was not a member club and did not meet the policy's definition of "named insured," coverage cannot be retroactively reinstated, and Nevada's statutory renewal scheme doesn't apply here.[44]  They also argue that USA Boxing and the other defendants did not negligently or fraudulently misrepresent coverage because the coverage summaries were accurate and Van Damme stated that he read them before joining USA Boxing.[45]  They add that the remaining claims for bad-faith, equitable estoppel, and defamation fail for those same reasons.[46]

## Discussion

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[47]  The moving party bears the initial responsibility of

---

[41] *Id.* at 44–55.

[42] *Id.* at 45–50.

[43] *See generally* ECF No. 111.

[44] *See generally* ECF Nos. 107, 108, 109, 123.

[45] *Id.*

[46] *Id.*

[47] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[48]  If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue for trial.[49]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial, "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[50]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense."[51]  When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[52]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[53]  "When simultaneous cross-motions for summary judgment on the same claim are

---

[48] *Id.* at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

[49] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes*, 67 F.3d 816, 819 (9th Cir. 1995).

[50] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (cleaned up)).

[51] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (cleaned up).

[52] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[53] *Celotex*, 477 U.S. at 322.

before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them."[54]

## A.    Nevada's statutory renewal scheme doesn't apply to this insurance policy.

City Boxing's first claim seeks a declaration that coverage from USA Boxing's 2020 policy didn't lapse.[55] It theorizes that the 2020 policy was automatically renewed for City Boxing because Scottsdale did not provide notice of nonrenewal or termination as required under the Nevada statutes governing insurance.[56] But among many other issues with this argument,[57] that notice requirement does not apply to "[p]olicies or contracts not issued for delivery in [Nevada] nor delivered in [Nevada]."[58] It's undisputed that Scottsdale did not deliver a copy of the policy in Nevada, only a certificate of insurance was mailed to City Boxing.[59]

City Boxing tries to pivot around this problem with language from the Nevada Supreme Court's decision in *Daniels v. National Home Life Assurance Co.*,[60] arguing that *Daniels* held that delivering a certificate meets that threshold delivery requirement. But *Daniels* did not

---

[54] *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,* 249 F.3d 1132, 1134 (9th Cir. 2001)).

[55] ECF No. 48 at 32–35.

[56] Nev. Rev. Stat. § 687B.340 ("[B]efore the date of expiration provided in the policy the insurer mails or delivers to the policyholder a notice of intention not to renew the policy beyond the agreed expiration date. If an insurer fails to provide a timely notice of nonrenewal, the insurer shall provide the insured with a policy of insurance on the identical terms as in the expiring policy."); Nev. Rev. Stat. § 687B.320(2).

[57] For example, both NRS 687B.340 and NRS 687B.320(2) require that notice be given to "policyholders." In its reply brief, City Boxing concedes that the "Scottsdale's interpretation of NAC 679B.655 regarding 'group insurance which is individually underwritten' is correct and that Plaintiffs, as certificate holders, are not 'policyholders' under that regulation." ECF No. 146 at 15.

[58] Nev. Rev. Stat. § 687B.010.

[59] ECF No. 103-2 at 239.

[60] *Daniels v. Nat. Home Life Assur. Co.*, 747 P.2d 897 (Nev. 1987).

9

address the situation in which just a certificate was mailed; it merely recognized that the statutory scheme triggered when the insurer mailed the actual policy in addition to sending a certificate.[61]  City Boxing's argument also fails because the certificate was not a policy or a contract.[62]  In fact, the certificate explicitly disclaims that it is either: "[t]his certificate is issued as a matter of information only and confers no rights upon the certificate holder" and "this certificate of insurance does not constitute a contract between the issuing insurer."[63]  So I grant summary judgment to the defendants on this no-notice-means-automatic-renewal theory.[64]

**B.        Extrinsic evidence may be used to decide if City Boxing was an insured.**

City Boxing next seeks a declaration that it was actually a member of USA Boxing at the time of the accident and thus an insured on the 2021 policy.  But as a threshold matter, the

---

[61] *Id.* at 900 ("National sent to Mr. Daniels not only a certificate of coverage, but also a copy of the master policy.  A copy of an insurance policy which is mailed to this state is clearly 'delivered in this state' within the meaning of NRS 687B.010(2).").

[62] *T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 585 (9th Cir. 2018) (applying Washington law) ("[A] [certificate of insurance] is not the functional equivalent of an insurance policy, and it therefore cannot be used to amend, extend, or alter the coverage provisions of an insurance policy."); *Empire Fire & Marine Ins. Co. v. Bell*, 55 Cal. App. 4th 1410, 1423 n. 25 (1997) (applying California law) ("A certificate of insurance is merely evidence that a policy has been issued.  It is not a contract between the insurer and the certificate holder."); *T.H.E. Ins. Co. v. Boise Hot Air, Inc.*, 593 F. Supp. 3d 1008, 1014 (D. Nev. 2022) ("[If] the certificate contains a disclaimer, the insured may not rely on the certificate, but must look to the policy to determine the scope of coverage.").

[63] ECF No. 103-2 at 239 (cleaned up).

[64] The defendants alternatively argue that this statute doesn't apply because Colorado law governs this insurance policy.  The parties also request a choice-of-law analysis on many of the causes of action in this case.  City Boxing contends that Nevada law applies to them all, while the defendants argue that, under the doctrine of dépeçage, the court should apply Colorado law to certain causes of action including this one.  Because City Boxing isn't entitled to relief on its statutory-notice argument even under Nevada law and the defendants don't otherwise identify a material conflict in Nevada and Colorado law necessary to resolve these motions, I do not reach the choice-of-law issue, and I apply Nevada law. *Tri-Cnty. Equip. & Leasing v. Klinke*, 286 P.3d 593, 595 (Nev. 2012) ("If there is no conflict, no further analysis is necessary, and the law of the forum state usually applies." (citing 15A C.J.S. Conflict of Laws § 30 (2012)).

parties disagree on what, if anything, can be offered to prove or disprove City Boxing's membership assertion. City Boxing seizes on a footnote in the Nevada Supreme Court's opinion in *Zurich American Insurance Co. v. Ironshore Specialty Insurance Co.*, stating that "the insured, but not the insurer, is allowed to introduce extrinsic evidence at the duty-to-defend stage."[65] City Boxing argues that this language means that it can offer evidence outside the Metzger complaint to support its claim that it was an insured, but Scottsdale can't offer any evidence to disprove that status. The only way to disprove its membership, City Boxing contends, was for Scottsdale to initially tender a defense then file a separate declaratory-judgment action to terminate that duty.[66]

City Boxing's argument misses its mark. It is true that the Nevada Supreme Court generally bars insurers from using extrinsic evidence to refuse to defend an insured as a prophylactic measure.[67] And extrinsic evidence is instead properly presented through a subsequent declaratory-judgment action "brought by the insurer seeking to terminate its duty to defend its insured in an action whereby the insurer is defending under a reservation of rights."[68] But the Nevada Supreme Court adopted these rules from comment c to § 13 of the Restatement of the Law of Liability Insurance. Comment c also acknowledges that courts widely recognize several exceptions to these rules,[69] including that an insurer may use extrinsic evidence "as to

---

[65] *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 497 P.3d 625, 631 n.9 (Nev. 2021); ECF No. 111 at 34.

[66] ECF No. 111 at 34 n.179, 43; ECF No. 138 at 22.

[67] *Century Sur. Co. v. Andrew*, 432 P.3d 180, 184 n.4 (Nev. 2018).

[68] *Id.* (citing Restatement of the Law of Liability Insurance § 13 cmt. c (Am. Law Inst., Proposed Final Draft No. 2, 2018) ("Only in a declaratory-judgment action filed while the insurer is defending, or in a coverage action that takes place after the insurer fulfilled the duty to defend, may the insurer use facts outside the complaint as the basis for avoiding coverage.")).

[69] Restatement of the Law of Liability Insurance § 13 (2019) cmt. c.

which there is no genuine dispute" to show that the "defendant in the action is not an insured under the insurance policy [under] which the duty to defend is asserted."[70]  I predict that the Nevada Supreme Court would adopt this portion of comment c and § 13(3)[71] given the fact that it is adopted other portions of the comment,[72] the wide support for this rule,[73] and the bizarre consequences of not having that rule.[74]  So Scottsdale may rely on extrinsic evidence to demonstrate that City Boxing was not an insured under the policy.[75]

---

[70] *Id.* § 13(3)(a); Allan D. Windt, 1 Insurance Claims and Disputes § 4:5 (6th ed.) ("Before the general principle regarding the duty to defend applies, it must be shown that the person claiming coverage is, in fact, an insured.  The insurer has imposed on itself a contractual duty to defend its insured against suits alleging facts that, if proved, would constitute a risk insured against under the provisions of the policy.  It has not imposed on itself a duty to defend a complete stranger to the contract.").

[71] *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 939 F.3d 1045, 1048–49 (9th Cir. 2019) ("If a state's highest court has not spoken on an issue, 'then we must predict how the state's highest court would decide" the issue.'" (quoting *Murray v. BEJ Minerals, LLC,* 924 F.3d 1070, 1071 (9th Cir. 2019))).

[72] *See, e.g.*, *Matter of Frei Irrevocable Tr. Dated Oct. 29, 1996*, 390 P.3d 646, 650 (Nev. 2017) ("In the absence of controlling law, we often look to the Restatements for guidance."); *Matter of Est. of Ulvang*, 585 P.3d 998, 1001 (Nev. 2026) ("This court has often relied on the Restatements to guide or supplement its analysis."); *See Andrew*, 432 P.3d at 184 n.4 (adopting other portions of Restatement of Liability Insurance § 13 cmt. c).

[73] *See, e.g.*, *Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 240 P.3d 67, 72–74 (Or. Ct. App. 2010); *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 840–41 (5th Cir. 2012); *Old Republic Ins. Co. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1002 (7th Cir. 1996); *Hartford Fire Ins. Co. v. Leahy*, 774 F. Supp. 2d 1104, 1111 (W.D. Wash. 2011); Allan D. Windt, 1 Insurance Claims and Disputes § 4:5 (6th ed.) (collecting cases and noting that "[s]everal courts, therefore, have held that the insurer is not obligated to provide a defense for a stranger merely because the plaintiff alleges facts that, if true, would make the stranger an additional insured as defined in the policy").

[74] Scottsdale notes that, under City Boxing's rule, "anyone in America who gets sued (e.g., Donald Trump)" could claim to be an insured and that would trigger Scottsdale's duty to defend. ECF No. 107 at 33.

[75] Scottsdale adds that City Boxing is also confusing the burdens of proof because the *insured* bears the initial burden of proving entitlement to coverage under the policy, *id.* at 630, which Scottsdale contends City Boxing cannot meet even with extrinsic evidence.

**C.    City boxing was not a member club during the incident and thus not an insured.**

Although the parties dispute the meaning of "insured" under the policy, they all agree that a club must be a "USA Boxing, Inc. member club[]" for coverage to exist.[76] Rule 801 of the Nevada local boxing club's bylaws states that "[e]very active member club joins the [Nevada local boxing club] and USA Boxing by submitting an approved application and by paying an annual fee established by the [Nevada local boxing club] and USA Boxing" and "[m]emberships [run from] the calendar year January 1 to December 31."[77] City Boxing had not paid its 2021 annual dues by the time of the accident. While that failure is seemingly dispositive, City Boxing asserts two purportedly coverage-saving theories: that a "grace period" maintained its membership status and that its membership was effectively retroactive to January 1, 2021, when it renewed its USA Boxing membership a month after the accident in late February 2021.

### 1.    *City Boxing failed to show a course of dealing establishing a grace period that extended the membership term.*

City Boxing contends that the bylaws are part of a larger "membership contract" that is an amalgamation of the coverage summaries, member confirmations, the national rulebook, the local bylaws, and USA Boxing and City Boxing's course of dealing.[78] City Boxing posits that its course of dealing with USA Boxing effectively amended the bylaws to include a membership grace period that extended its membership to at least January 22, 2021, one day after the accident.[79] City Boxing supports that assertion with a 2018 email in which USA Boxing's

---

[76] *See, e.g.*, ECF No. 138 at 12; ECF No. 144 at 17.

[77] ECF No. 103-3 at 226.

[78] ECF No. 48 at ¶ 241; ECF No. 146 at 15.

[79] *See, e.g.*, ECF No. 111 at 5–7, 37.

membership coordinator passingly referred to members as "current" or "in grace period" and tabularized clubs into those categories.[80]  City Boxing supplements that evidence with contemporaneous text messages suggesting that USA Boxing prepared this list to show which member clubs could vote in an upcoming local-boxing-club election.[81]  It also notes that Rule 201(1)(d)(2) of the bylaws require clubs to have been continuous members for at least six months to vote, so USA Boxing must consider these "grace period" clubs as still being members.[82]

The Nevada Supreme Court recognizes that a "course of conduct" or "course of dealing" may affect a contract's interpretation and parties' rights.[83]  As the Restatement (Second) of Contracts elaborates, course-of-dealing evidence can be offered for several purposes: "a course of dealing between the parties gives meaning to or supplements or qualifies their agreement,"[84] "or it may show . . . modification or waiver."[85]

While a course of dealing may be offered as extrinsic evidence to explain or supplement a term, it generally cannot supersede a contract's express language.[86]  And assuming there is a

---

[80] ECF No. 103-3 at 230–33.

[81] *Id.* at 257–64.

[82] ECF No. 111 at 37–38.

[83] *Nev. Nat. Bank v. Huff*, 582 P.2d 364, 369 (Nev. 1978); *VRES, LLC v. Classic Landscapes, LLC*, 552 P.3d 72, at *7 (Nev. Ct. App. 2024) (unpublished).

[84] Restatement (Second) of Contracts § 223(2) (1981).

[85] *Id.* at § 203 cmt. d.

[86] *See Zahavi v. State*, 343 P.3d 595, 599 (Nev. 2015); *Ringle v. Bruton*, 86 P.3d 1032, 1037 (Nev. 2004) ("The parol evidence rule does not permit the admission of evidence that would change the contract terms when the terms of a written agreement are clear, definite, and unambiguous.  However, parol evidence is admissible to prove a separate oral agreement regarding any matter not included in the contract or to clarify ambiguous terms so long as the evidence does not contradict the terms of the written agreement."); *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 215 Cal. Rptr. 3d 835, 848 (Cal. Ct. App. 2017) ("While course-of-performance evidence can be relevant to ascertaining what the parties intended the contract to

14

contract here, the written portions of the purported membership agreement unambiguously state that membership and coverage expire December 31st and restart upon registration. Rule 801 of the bylaws states that "an annual fee" is required for membership and "[m]emberships are for the calendar year January 1 to December 31."[87] The coverage summaries state that "[c]overage starts on the day of registration and expires when the policy expires (December 31),"[88] and "liability coverage is in place from the day [the owner] register[s] [the] club. Of course, [the owner] must renew [his] club membership annually."[89] The membership confirmation emails also list City Boxing's membership as starting on the day of registration and expiring on December 31st.[90]

Nor does the evidence support a finding that USA Boxing waived or modified these express provisions. "[C]onsent to a modification may be implied from conduct consistent with an asserted modification" and must be shown by "clear and convincing" evidence.[91] But City Boxing fails to establish how this single email constitutes clear-and-convincing evidence from which a reasonable jury could find a wider course of dealing to modify or waive the length of membership term stated in Rule 801 of the bylaws. Indeed, the email itself contradicts City Boxing's course-of-dealing theory by listing the "grace period" clubs' memberships as expiring

---

mean at the time of execution, such evidence may not be used to vary or contradict the unambiguous terms of a written agreement."); Restatement (Second) of Contracts § 203(b) (1981) ("[E]xpress terms are given greater weight than . . . course of dealing").

[87] ECF No. 103-3 at 226.

[88] ECF No. 103-1 at 9, 25; ECF No. 103-3 at 196; ECF No. 103-7 at 104.

[89] ECF No. 103-1 at 13.

[90] *See, e.g.*, ECF No. 103-2 at 236; ECF No. 103-1 at 56.

[91] *Clark Cnty. Sports Enters., Inc. v. City of Las Vegas*, 606 P.2d 171, 175 (Nev. 1980); Restatement (Second) of Contracts § 202 cmt. g (1981) ("[If] it is unreasonable to interpret the contract in accordance with the course of performance, the conduct of the parties may be evidence of an agreed modification or of a waiver by one party.").

December 31st of the prior year.[92]  Nothing in the email fleshes out the meaning of "grace period," and no other evidence links this bare mention of a grace period to any course of dealing regarding membership length or continuing benefits.

The other available evidence in this record also belies any modification or waiver of membership length.  In its briefing, City Boxing connects this email to the member club's voting rights only,[93] and USA Boxing's director of membership services submitted a declaration stating that this "grace period" related only to voting rights.[94]  So any inferable course of dealing would be a waiver of the bylaws' separate six-month membership-voting requirement in Rule 201(1)(d)(2) only, not the provisions governing the length of membership.  Other course-of-dealing evidence strongly suggests that membership does in fact expire on December 31st.  For example, leading up to the incident, USA Boxing emailed City Boxing five times in November and December that its membership would expire on December 31st,[95] and it emailed City Boxing again in early January stating that City Boxing's membership had expired.[96]

City Boxing thus has not met its summary-judgment burden on its grace-period theory.  While the court must consider all inferences that the jury could make and draw all inferences in City Boxing's favor,[97] a "mere scintilla of evidence will not do, for a jury is permitted to draw

---

[92] ECF No. 103-3 at 233.

[93] ECF No. 111 at 5–7.

[94] ECF No. 136-2 at 3–4.

[95] *See* ECF No. 103-2 at 241–245, 249.

[96] *Id.* at 251.

[97] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1545 (9th Cir. 1989) ("A court evaluating a summary judgment motion must consider all justifiable and legitimate inferences in the nonmoving party's favor." (cleaned up)).

16

only those inferences of which the evidence is reasonably susceptible."[98]  Because City Boxing's proffered email is a scintilla at best, I find that its grace-period theory fails to create a genuine issue of material fact.

### 2.   *The fortuity principle bars retroactive coverage.*

City Boxing alternatively contends that its coverage for 2021 got reinstated with an effective date of January 1, 2021, when USA Boxing allowed City Boxing to renew its membership in the organization several weeks after the incident.  City Boxing theorizes that its act of re-acquiring membership during the 2021 calendar year retroactively reinstated its membership to a date prior to the accident because the USA Boxing bylaws state that membership runs from January 1st to December 31st.  City Boxing also seems to suggest that the policy retroactively covered it because it became an insured on the policy during the policy period and received a certificate of insurance with an "effective" date of January 1, 2021.

Insurance doesn't work that way.  Nevada recognizes that an insurance contract impliedly requires fortuity[99]—that the loss resulted from "risk, chance, contingency, and uncertainty," rather than by design[100]—and a lack of fortuity bars coverage.[101]  Many states and the Restatement of the Law of Liability Insurance recognize this fortuity principle through the known-loss doctrine: a "liability insurance policy provides coverage for a known liability only if

---

[98] *Brit. Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

[99] *Fed. Ins. Co. v. Coast Converters*, 339 P.3d 1281, 1286 (Nev. 2014).

[100] Restatement of the Law of Liability Insurance § 46 (2019); 7 Couch on Ins. § 102:7 ("Implicit in the concept of insurance is that the loss occur as a result of an event that is fortuitous rather than planned, intended, or anticipated.").

[101] *Fed. Ins. Co.*, 339 P.3d at 1286.

that liability is disclosed to the insurer during the application or renewal process for the policy."[102]

Nevada has not yet stated that its implied-fortuity requirement includes the known-loss doctrine,[103] let alone that it would apply in this unusual situation in which the known loss arose during the policy period but before the insured joined the policy. But I predict that the Nevada Supreme Court would adopt the known-loss doctrine in some form and that it would extend its implied-fortuity requirement to bar coverage in this situation.

The Florida District Court of Appeal in *Interstate Fire & Casualty Co. v. Abernathy* found that fortuity principles still barred coverage in this precise situation.[104] In *Abernathy*, the Choctaw Touchdown Club hosted a fundraiser called the Jellyfish Festival in which a child was injured during the inflatable bungee run.[105] The club was uninsured at the time of the incident.[106] But the festival's recreational-gear supplier was insured for these kinds of incidents, so several days after the accident, the club requested the supplier name the club as an additional insured on its existing policy.[107] The supplier obliged, but the insurer refused to defend the club.[108] In a subsequent bad-faith claim brought against the insurer, the trial court held that the

---

[102] Restatement of the Law of Liability Insurance § 46 (2019); *Montrose Chem. Corp. v. Admiral Ins. Co.*, 913 P.2d 878, 905 (Cal. 1995) ("In the liability insurance context, insurance cannot be obtained for a 'known liability.'").

[103] Scottsdale's insurance policy explicitly excludes known losses that occurred "prior to the policy period." ECF No. 103-2 at 24. The Metzger incident, however, occurred *during* the policy period, but before City Boxing was an "insured" on the policy, so this case doesn't cleanly fit within the exclusion's wording.

[104] *Interstate Fire & Cas. Co. v. Abernathy*, 93 So. 3d 352, 355 (Fla. Dist. Ct. App. 2012).

[105] *Id.* at 354–55.

[106] *Id.* at 355.

[107] *Id.*

[108] *Id.* at 355–56.

coverage was in effect because "there was no reason why an injured party could not acquire insurance coverage after the fact of the injury."[109]

But the appellate court reversed. It noted that "[a]n agreement to assume a known loss is not insurance" because of the fortuity requirement.[110] It identified several public-policy reasons for barring this maneuver, explaining that the "rule forbidding 'insuring against' known losses is part and parcel of the public policy to protect other policy holders against insolvent insurers."[111] The court also noted that "[t]his basic doctrine does not arise from a desire to protect an individual insurance company from something akin to fraud . . . but from a recognition that [an] insured's risk is, in a real sense, borne by the insurer's policyholders as a group, from whose pool of premiums all claims must be paid if the insurer is to remain in business" and "because society as a whole relies on insurance, public policy will not permit a transaction that is anathema to the very concept of insurance which, if allowed in the aggregate, could put insurance at risk for all."[112] Thus, the *Abernathy* court held that the fortuity principle barred coverage even though the policy itself did not forbid it.

Because Nevada recognizes that insurance contracts require fortuity and that "[t]he fortuity principle applies even if not explicitly written into the insurance contract,"[113] and given the strong public-policy reasons articulated in *Abernathy*, I predict that the Nevada Supreme Court would similarly bar coverage for this loss based on the fortuity principle because it's

---

[109] *Id.* at 357.

[110] *Id.* at 359.

[111] *Id.*

[112] *Id.* (quoting *Nourachi v. First Am. Title Ins. Co.*, 44 So.3d 602, 607 (Fla. Dist. Ct. App. 2010) (Lawson, J., concurring)).

[113] *Fed. Ins. Co.*, 339 P.3d at 1286.

undisputed that the Metzgers had sent a notice of claim shortly after the accident and City Boxing knew of the liability risk by the time its coverage was reinstated.[114] So I conclude that City Boxing was not an insured on the policy and its coverage under USA Boxing's policy was not retroactively reinstated to a date prior to the Metzger incident.[115]

As a result, City Boxing's claims for declaratory relief against the defendants and breach of contract against Scottsdale fail. Scottsdale and K&K also could not have denied City Boxing's claim in bad faith or committed statutory violations of NRS 686A.310 because the policy did not cover City Boxing, so they had a reasonable basis for denying coverage.[116] And USA Boxing could not have defamed City Boxing if the statement that City Boxing was not a member was true.[117] So I grant summary judgment in favor of the defendants on those claims.

---

[114] ECF No. 103-2 at 278.

[115] Besides the fortuity principle barring any retroactive coverage based on the certificate of insurance, the certificate also states that it "confers no rights upon the certificate holder" and "this certificate does not affirmatively or negatively amend, extend or alter the coverage afforded by the policies below." Courts have found this type of language sufficient to disclaim coverage. *T.H.E. Ins. Co.*, 593 F.Supp.3d at 1014; *Prime Ins. Syndicate, Inc. v. Concepcion*, 2008 WL 682412, at *3 (D. Nev. Mar. 6, 2008).

[116] *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998) ("To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage."); *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 197 (Nev. 1989) ("Liability for bad faith is strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship . . . . When no contractual relationship exists, no recovery for bad faith is allowed."); *Gunny v. Allstate Ins. Co.*, 830 P.2d 1335, 1335–36 (Nev. 1992) (holding that plaintiff lacked standing to sue under NRS 686A.310 because he was not an insured and did not have a contractual relationship with the insurer); NRS 686A.310(2) ("[A]n insurer is liable to its *insured* for any damages sustained by the *insured* as a result of the commission of any act set forth . . . as an unfair practice." (emphasis added)).

[117] *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev. 2002) ("[A] statement [is not] defamatory if it is absolutely true, or substantially true.").

20

**D.      USA Boxing did not breach its membership agreement or intentionally interfere with the insurance contract.**

City Boxing claims that USA Boxing breached its "membership agreement" with City Boxing because "USA Boxing had no contractual right to place an administrative hold on City Boxing's account to prevent payment during the grace period."[118]  And "[i]f USA Boxing had not blocked City Boxing from paying dues, City Boxing would have paid during the grace period in late January 2021" and "USA Boxing would have issued a certificate of insurance with a January 1, 2021, effective date."[119]  City Boxing also suggests that it "had continuous coverage as a term of its membership agreement, which is informed by the grace period and course of dealing."[120]

But even accepting that there was a contract and it required USA Boxing to renew City Boxing's membership,[121] this claim fails because a breach must cause the plaintiff's damages,[122] and these alleged breaches didn't.  Even if USA Boxing had allowed City Boxing to immediately rejoin after the incident, City Boxing still would have suffered the same alleged harm (not receiving coverage) because any attempt by City Boxing to backdate coverage for this known loss would fail on public-policy grounds.  So the administrative hold had no effect on City Boxing's inability to receive coverage and did not cause City Boxing's alleged damages.  And as explained *supra*, there is no such grace period or course of dealing creating continuous coverage

---

[118] ECF No. 111 at 51.

[119] *Id.* at 54 (cleaned up).

[120] ECF No. 140 at 18.

[121] Points that I am doubtful of.

[122] *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. Ct. App. 2022).

21

because that contention is plainly belied by the written portions of the purported "membership agreement."[123]  So I grant USA Boxing summary judgment on this claim.

For the same reasons, City Boxing's intentional-interference claim fails.  "In an action for intentional interference with contractual relations, a plaintiff must establish . . . resulting damage."[124]  Because City Boxing's intentional-interference claim is based on identical allegations regarding the administrative hold and similarly requires causation,[125] I grant summary judgment on that claim as well.

**E.    USA Boxing did not breach the implied covenant of good faith and fair dealing.**

City Boxing asserts that USA Boxing breached the implied covenant of good faith and fair dealing.  A party breaches this covenant if it "performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied."[126]  The breach must also have caused the damages.[127]  City Boxing contends that USA Boxing breached this implied covenant because it did not provide a copy of the policy, allow City Boxing to renew its membership after the incident, or maintain continuous coverage even after its membership expired.[128]  These first two purported breaches fail for lack of causation because having a copy of the policy or renewing membership after the incident would not have given City Boxing coverage.  Nor can City Boxing establish that it justifiably expected continued insurance coverage after December 31st because USA Boxing's written materials clearly stated

---

[123] *See, e.g.*, ECF No. 103-1 at 9, 13, 25; ECF No. 103-3 at 196; ECF No. 103-7 at 104.

[124] *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

[125] ECF No. 48 at 44–45.

[126] *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 923 (Nev. 1991).

[127] *Fin. Am. Grp., LLC v. CH Montrose*, LLC, 373 P.3d 913, at *2 (Nev. 2011) (unpublished).

[128] ECF No. 48 at 41–43; ECF No. 111 at 52–54; ECF No. 140 at 18.

that membership and insurance coverage expire December 31st[129] and that "[the owner] must renew [his] club membership annually" for coverage.[130]  So I grant USA Boxing summary judgment on this claim.

**F.     USA Boxing and the insurer did not mislead Van Damme and City Boxing.**

Finally, City Boxing asserts fraud and negligent-misrepresentation claims, alleging that USA Boxing misrepresented what its membership and its insurance policy provided.  But among other elements, these claims require causation, reliance, and some sort of a "false representation" or "false information."[131]  And as explained *supra*, USA Boxing's national rulebook, coverage summaries, and confirmation emails provided the true statements that membership and coverage start on the date of registration and expire on December 31st.[132]  Van Damme also cannot show that he was misled about the scope of coverage or that these potential limitations on coverage caused City Boxing to not receive coverage (rather than not paying dues).[133]  The coverage summaries state that "USA Boxing registered Clubs" are covered for "USA Boxing sanctioned competitions and organized practices at which a coach, manager or trainer is physically present"

---

[129] *See, e.g.*, ECF No. 103-1 at 9, 13, 25; ECF No. 103-3 at 196; ECF No. 103-7 at 104.

[130] ECF No. 103-1 at 13.

[131] *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021) ("To prevail on a fraud claim, a plaintiff must prove . . . by clear and convincing evidence . . . a false representation."); *Nutraceutical Dev. Corp. v. Summers*, 373 P.3d 946, at *3 (Nev. 2011) (unpublished) (noting that a fraudulent-misrepresentation claim requires reliance and "a causal connection between the inducement and the plaintiff's act or failure to act resulting in the plaintiff's detriment"); *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1153 (Nev. 2013) (holding that negligent misrepresentation requires causation, reliance, and a party to supply "false information").

[132] *See, e.g.*, ECF No. 103-1 at 13.

[133] Although the court did not resolve what exactly the policy in this case covers because City Boxing could not establish it was a member club and thus an insured, Van Damme cannot claim to have not been warned of defendants' narrow view of the scope of coverage.

23

and that "[a]ll participants (athletes, coaches, officials <u>MUST</u> be registered with USA Boxing.)"[134]  The other representations that City Boxing points to contain similar caveats, state registration is required, or direct the reader to other documents for more information.[135]  Nor can Van Damme and City Boxing establish that they detrimentally relied on USA Boxing's materials in choosing not to obtain their own policy because the coverage summaries advised them that "[i]f an individual club has its own facilities or participates outside of USA Boxing sanctioned matches, it is important that they obtain separate liability insurance coverage."[136]  Van Damme stated that he read those documents before the incident.[137]  So Van Damme and City Boxing's claims for fraud and negligent misrepresentation fail for lack of a false representation, causation, and reliance.[138]  Their claim for equitable estoppel is based on the same representations and the purported "grace period," but this claim similarly fails because City Boxing was not ignorant of the "true facts" regarding these representations.[139]  So I grant the defendants summary judgment on the remaining claims for fraud, negligent misrepresentation, and equitable estoppel.[140]

---

[134] ECF No. 103-1 at 9, 25; ECF No. 103-3 at 196; ECF No. 103-7 at 104.

[135] *See* ECF No. 103-1 at 69; ECF No. 111-8 at 4; ECF No. 111-19 at 8.

[136] *See, e.g.*, ECF No. 103-1 at 9, 25; ECF No. 103-3 at 196; ECF No. 103-7 at 104.

[137] ECF No. 123-33 at 290:25–292:10, 315:17–316:25.

[138] K&K and Scottsdale also point out that they had nothing to do with the preparation of these coverage summaries.  *See, e.g.*, ECF No. 108 at 7.

[139] *Las Vegas Convention & Visitors Auth. v. Miller*, 191 P.3d 1138, 1157 (Nev. 2008) ("[T]he party asserting estoppel must be ignorant of the true state of the facts.").

[140] Scottsdale and K & K also move to seal their claim-handing guidelines, contending that they contain confidential business information and trade secrets.  ECF No. 110.  Finding compelling reasons to seal, I grant that motion.

**Conclusion**

IT IS THEREFORE ORDERED that defendants Scottsdale Insurance Company, K & K Insurance Group, Inc., and USA Boxing, Inc.'s motions for summary judgment **[ECF Nos. 107, 108, 109, 123]** are **GRANTED**.  Plaintiffs' motion for partial summary judgment **[ECF No. 111]** is **DENIED**.  Defendants Scottsdale Insurance Company and K & K Insurance Group, Inc.'s motion for leave to file documents under seal **[ECF No. 110]** is **GRANTED**.  The Clerk of Court is directed to **MAINTAIN the SEAL on ECF Nos. 127, 128, 129, and 130**.  The Clerk of Court is also directed to **ENTER FINAL JUDGMENT** against the plaintiff and in favor of the defendants on all claims and **CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
July 8, 2026